Thomas Joseph Yosti *et al.*, Respondents, *v.* Thomas Laughran *et al.*, Appellants.

1. *Undue influence — Donations to persons in relation of trust, etc.* — Donations to persons sustaining the relation of confidential friend and adviser of the donor, will be watched with great jealousy, and will be set aside on the discovery of the least fraud. Every presumption will be against them.

*Appeal from St. Louis Circuit Court.*

*Bakewell & Farish*, for appellants.

*Cline, Jamison & Day*, and *Chas. Jones*, for respondents.

Bliss, Judge, delivered the opinion of the court.

The plaintiff was an aged woman, the owner of a valuable farm of 148 acres in St. Louis county, and the mother of seven living children, of whom the defendant Margaret Laughran was the youngest. It is shown by the witnesses on both sides that she was an impulsive and somewhat capricious woman; that she possessed strong likes and dislikes, often changing their object, and was easily influenced by those who for the time being possessed her confidence. In March, 1860, being then about sixty-six years of age, she conveyed in fee simple to the defendant Margaret the said farm, being all the real estate she possessed,

and the present proceeding is to set aside the conveyance upon the ground of fraud and undue influence.

The petition charges that the plaintiff, being infirm and dependent upon others for the management of her business, and having a large amount of personal property, and as the sole legatee of a deceased son, having come into possession of a large amount of bonds, bills and notes, turned over to said Thomas Laughran all her business and the entire management of her farm ; that he and his wife came to live in the same house with her ; by art and management obtained her confidence and a control over her, and obtained her signature to the deed spoken of by pretending that it was a mortgage to secure some advances made by him for improvements upon the place. The petition is full, and charges this fraud in detail, and also that the deed was obtained by undue influence acquired by their relations.

The charge of actual fraud, as laid, I do not find to be sustained. The plaintiff is very positive in her testimony that she did not design to convey the property, but the contradictory evidence is so conclusive that there can be little doubt as to her intention at the time. But the earnestness and apparent sincerity with which she asserts her ignorance of the true character of the transaction, impresses me with the frailty of her intellect and her great susceptibility to surrounding influence. The evidence, however, establishes the fact that there was either fraud in regard to the consideration, or a total failure of it, so far as it was to be received by the grantor. Mrs. Yosti, according to the evidence submitted by defendants, only intended to give Mrs. Laughran the farm after her death, and had no idea of surrendering the control of it during her life. She was brought by Laughran to his conveyancer, and was told that she could not grant a reversion, but was advised to give a regular deed and take a life-lease. She executed and acknowledged the deed to Mrs. Laughran, left it with Mr. Laughran and the conveyancer, and trusted the matter of the lease entirely to him. Laughran, it appears, executed the lease *in his own name*, and while the deed to his wife was recorded, the lease was withheld from record, and does not appear ever to have been delivered.

Taking the defendants' own version of the transaction, this was a fraud upon her, although they may never have intended to disturb her possession. Laughran was acting as her general agent at the time, and even if that fact of itself did not affect the transaction, he was bound to the most scrupulous good faith. He had no right against her will to make her a mere pensioner, to throw her upon the charity of her children. And yet such was the effect of the transaction. He testifies that he gave her the lease, but she denies it, and circumstances support her statement.

After their disagreement, and she had found out the deception practiced upon her, or had repented of her act, a son of Mrs. Yosti called in Judge Thomas, a neighbor, to help settle their difficulties. One of her complaints was that Laughran had promised to give her a deed, but would not do it. Her version is that she had reproached him with the fraud in obtaining the conveyance, and he had promised that the land should be deeded back, while he claims that she only referred to the life-lease. Mr. Thomas testifies that during their altercation she said to Laughran, "You know you promised to make me deed." "Well," he said, "I will make it at a proper time." He never made it, whether it was to be a lease or a reconveyance, and thus the transaction was not completed as to a material part.

Mrs. Yosti died after the commencement of this suit, and defendants now claim that, as she has had the enjoyment of the farm during her life, it does not matter whether she had a lease or not. But she made the conveyance upon an express condition, and trusted defendant Laughran as her agent, to see that the condition was complied with. That trust he betrayed, and thereby took a greater estate than she ever intended to grant. She had, then, a right to repudiate, as she did, the whole transaction, and seek to be restored to her own.

Another objection to this deed arises from the relation of the parties. Counsel claim that the confidential and fiduciary relation afterward created did not exist until long after its execution, and that nothing can be presumed against it in consequence of such relation. But the evidence shows that it had existed for more than a year. Laughran became Mrs. Yosti's son-in-law in De-

cember, 1858. She at once made him her agent for the transaction of her business. She was sole legatee and executrix of a deceased son, and there were on hand notes, etc., uncollected, amounting to some $30,000 or $40,000, which had been in the hands of Lewis, one of her sons. These notes, etc., he was directed to turn over to Laughran, and when he suggested that a receipt should be taken, she forbade it, saying that he was honest, etc. Laughran was doing business and living in town, but in June, 1858, his wife went home to her mother. He testifies that he went out about twice a week, but other witnesses say he went home every afternoon and returned in the morning, and that he spent his Sundays there, which was all natural. During this time, and before he left town entirely, and before the deed was executed, he took general charge of the farm, made improvements, and everything seemed to be in his hands.

In March, 1860, the deed was executed, and it was not until the spring of 1861 that he gave up his office in town and spent his whole time upon the place. Until the spring of 1860 Lewis had worked upon it, but a coolness had sprung up between him and his mother after Laughran's marriage, and he was then almost driven from the place. Without going into details, it appears from the testimony of all, strangers as well as members of the family, that from their first acquaintance Laughran acquired a controlling influence over Mrs. Yosti ; that he became her confidential friend, agent and adviser ; that she trusted him in everything, and did nothing without him ; that her heart was turned against the rest of the family, and all her affections centered upon Laughran and wife ; and that this state of things existed before as well as after the execution of the conveyance. This is precisely the relation spoken of in the books as so seriously affecting transactions in favor of the agent and adviser, and that compels him always to act in the interest of the person whom he represents and over whom he has acquired the ascendency.

But this is not all. There is evidence tending to show that this preference of Margaret was brought about by arts so often successful in entrapping the weak. Witnesses speak of his flatteries, "his blarney," of his unusual and assiduous attentions and kind-

ness, of his monopolizing her society, of his religious devotions to win her confidence, and of her alienation from her children, which they all attribute to his influence. And further, Mrs. Doll, one of the daughters, testifies to a proposition he made to her to obtain the farm between them. It was divided into what was called the homestead and McClure place, and she swears that he said, "I could get the McClure place for you and the homestead for me; I can work it through." He said all he wanted was for them to say so, and he could fix it up in black and white, but she and her husband declined to have anything to do with it.

This conversation Laughran denied, and we might consider it not proved, or perhaps improbable, had it not been followed by his success in obtaining a conveyance of the whole to his wife. Also, there is significance in the fact that the conveyance was concealed from the other children, and until accidentally discovered upon the record about three years after. Stress is laid upon the fact that when Laughran married, Mrs. Yosti, as executrix of her son, was indebted to her daughter Margaret in about the sum of $4,000, being part of her interest in her father's estate, which was held by her deceased brother as guardian; and it is urged that the conveyance of the farm was in consideration of such indebtedness. But its significance vanishes when we consider the fact that this amount has been largely overpaid by collections made on behalf of Mrs. Yosti, so that the deed was simply one of gift, and if she was made to believe that she owed her daughter, that of itself was fraudulent.

I shall not attempt to review the authorities or discuss the questions of law suggested by the facts of this case. They have been so often considered by this court, and especially of late in Garvin's Administrator v. Williams, 44 Mo. 465, and in Cadwallader v. West, 48 Mo. 483, and in well-considered and elaborate opinions, as to render it quite unnecessary.

It may not be that Laughran was wholly incapacitated from receiving a donation from Mrs. Yosti, but such donations will not only be watched with great jealousy, but will be set aside upon the discovery of the least fraud. Every presumption is against them, and I do not find in the present case that this presumption

is repelled by the facts. It is true the defendants testify that it was a perfectly free donation, and that it was promised before Mrs. Yosti came under Laughran's influence; but that is repelled by the testimony of Mrs. Yosti herself, and is not sustained by any considerations of probability.

There was a large family. Not one of the children had received anything from their mother. She proposes to give everything to one, but the gift is not perfected until more than a year after the husband had become the sole agent — the keeper, as it were — of the donor, until she had become prejudiced against her other children, and then made under circumstances that of themselves threw suspicion upon the transaction. This important fact cannot be founded alone upon the testimony of the recipients of the gift where contradicted by the other party.

But Mrs. Laughran was the recipient of the gift, and shall she suffer from the acts of her husband? Aside from the consideration of the husband's interest, and the fact that the gift is for him as well as her, even if a stranger, she should not be benefited by a fraud, either in fact or in law. She does not suffer; she takes her equal share, and the law presumes that but for the improper conduct of her husband she would never have received more.

This subject is discussed by Lord Eldon in Huguenin v. Basely, 14 Ves. Jr. 273, who quotes approvingly, on p. 289, the remarks of Hardwicke and C. J. Wilmot in Bridgman v. Green, 2 Ves. 627. The latter says: "There is no pretense that Green's brother or his wife was a party to any imposition, or had any due or undue influence over the plaintiff; but does it follow from thence that they must keep the money? No. Whoever receives it must take it tainted and infected with the undue influence and imposition of the person procuring the gift."

The Circuit Court set aside the conveyance, and its action will be affirmed. The other judges concur.