————o————

WALTER BOWLES, Appellant, *vs.* THEODORE B. WATHAN, Respondent.

1. *Contracts—Partial performance—Frauds, statute of—Specific performance—Deeds—Undue influence.*—A. made a deed to his daughter B. for certain lands, but retained the deed, showing it to B. and her husband C., saying that she should have it at his death, but he wanted them to come and take charge of the property and live on it. B. and C. came and lived on the property and made improvements, and afterwards, hearing they had no title thereto, requested A. to give them the deed, threatening, in case of refusal, to leave the land. A. finally gave them the deed, but took a conveyance of a part of the land, including the improvements, from them to him for his life. A. afterwards brought suit to set aside his conveyance, on the ground of undue in-

Bowles v. Wathan.

fluence. *Held*, that, if B. and C. had remained on the land till A's death, they could have compelled his heirs to specifically perform the contract and convey the land to B., that A. only did in advance what he intended to do at his death, and that there was no undue influence exerted.

*Appeal from St. Charles Circuit Court.*

*Theodore Bruere and King & McDearmon*, for Appellant.

I. The defendant in concealing from plaintiff the fact, only known to himself, that it was almost certain his wife would die in a short time, committed a fraud upon the plaintiff in procuring a deed of gift to his wife, which therefore, contrary to the intention of the grantor, must result and did result to his own benefit. (3 Wh. & Tud. Cas. in Eq., 141, 143 ; Huguenin vs. Baseley, 14 Ves., 299 ; Lyon vs. Home, 6 Eq. Cas. [Law], 655 ; Sears vs. Shaper, 6 N. Y., 268 ; Tyler vs. Gardiner 35 N. Y., 559.)

II. As to what constitutes in law undue influence. (1 Sto. Eq. Jur., 264–271 ; 3 Lead. Cas. Eq., 125, 127 ; 9 How., 552 ; 8 How., 183 ; 44 Mo., 465 ; 46 Mo., 147 ; 48 Mo., 483 ; 50 Mo., 206.)

III. Deeds excuted under undue influence must be set aside. (1 Sto. Eq. Jur., 264–271 ; 3 Lead. Cas. Eq., 125, 127, 136, 137, 140, 145 ; 8 How., 183 ; 44 Mo., 465 ; 46 Mo., 167 ; 48 Mo., 483 ; 14 Ves., 299.)

IV. Very little proof is required when a person is of extreme age, especially when the deed is obtained without consideration. (1 Sto. Eq. Jur., 264–271 ; 44 Mo., 465 ; 46 Mo., 147 ; 48 Mo., 483 ; 50 Mo. 206 ;)

V. That the donor is at the time of the gift a member of the donee's family, and residing in the same house, is proof of moral duress and undue influence. (Poston vs. Gillespie, 5 Jones Eq., 258 ; Taylor vs. Taylor, 8 How., 183 ; Espey vs. Lake, 10 Hare, 262.)

*E. A. Lewis*, for Respondent.

I. The deed was in fact effectually delivered immediately after the marriage of plaintiff's daughter, about four years

before the transaction which is here set up as a delivery under " undue influence." (Folly vs. Vantuyl, 4 Halst., 153; Sonverbye vs. Arden, 1 Johns' Ch., 240; Chess vs. Chess, 1 Penn., 32; Scrugham vs. Wood, 15 Wend., 545.)

*Orrick & Emmons*, for Respondent.

1. Old age of itself does not disqualify a person from making a valid deed, and being *compos mentis* he could legally be a disposer of his property, and his will stands for a reason. (1 Sto. Eq. Jur., 244; 7 Iowa, 60; 23 Wend., 255.)

ADAMS, Judge, delivered the opinion of the court.

This was an action to set aside a deed, upon the alleged ground that it had been obtained by undue influence exercised by the defendant and his deceased wife over the mind of plaintiff. The answer denied all the material allegations of the petition. After a final hearing, the court dismissed the petition, and from this judgment the plaintiff has appealed to this court. The leading facts are about as follows: The plaintiff is eighty-three years old. In 1865 he made a partial distribution of his property. To each of his children he gave a deed for certain lands. The defendant's wife was his pet child, and he made a deed of his homestead to her, but retained it in his possession, and intended to retain it till his death. The defendant lived in Kentucky, and married this pet child in 1866, and the morning after his marriage the plaintiff exhibited the deed he was holding for his wife, and told him they should have that property at his death, and he wanted them to come and take charge of the place and live on it. The defendant replied, that he had an engagement in Kentucky, which would detain them for one year, and that, as soon as his engagement expired, he would return with his wife, and at the expiration of his engagement he did return with his wife and took possession of the premises, and remained there making improvements, etc., for several years. After being there for some time, he and his wife learned that it was claimed that they had no more interest in the premises than the other children; and the defendant's wife commenced

importuning the plaintiff for the delivery of the deed.   They
threatened to remove from the place unless the deed should
be delivered.   The plaintiff resisted for some time, but finally
compromised the matter by delivering the deed and taking
back from the defendant and his wife a deed for a part of the
land for life, including the improvements.   In the course of
six months or so, the defendant's wife had a child, and died
in her confinement.   Before her confinement she made a will
in favor of her husband and the child with which she was
then *enciente*, devising the land covered by the deed in dis-
pute to them.   A short time after its birth, the child also
died, leaving the defendant as the only heir at law.   After
the death of the child, the plaintiff complained that the deed
in dispute was obtained by undue influence exercised over
him by his daughter and her husband.   At the time of the
delivery of the deed, he shed tears, but had received a letter
from one of his children, and the witness did not know,
whether it was the delivery of the deed, or the news in the
letter, that caused him to weep.   These are the main facts as
detailed in the evidence.   It is manifest, from the evidence,
that in delivering the deed the plaintiff was performing an act
in advance, which he had all the time intended to have legal
efficacy at his death.   The defendant had taken possession
of the premises and erected improvements and performed la-
bor, under the assurance that the property should belong to
his wife at the death of the plaintiff.   If the defendant had
remained on the place until the death of the plaintiff, under
the contract which he had made with the plaintiff, he would
have been legally entitled to a specific performance of the
contract.   (See Halsa vs. Halsa, 8 Mo., 303.)   The contract
in the case of Halsa vs. Halsa was in writing, but the only
consideration was precisely the same as the one under re-
view.   When the purchase money is paid and possession ta-
ken and improvements made under a verbal contract to con-
vey land, such acts remove the case from the statute of frauds.
In delivering the deed in question, the plaintiff was only do-
ing in advance what the law would have compelled his heirs

to do after his death.   Under the circumstances, the death of the wife would not have made any material difference.   The child would have inherited the estate from its mother, and the defendant from his child.   The evidence fails to show any undue influence in procuring the deed.   The plaintiff showed ample mental capacity.   He resisted their importunities, and would not yield until he was provided for with a home for life.   There seems to be no case for setting aside this deed on account of undue influence exerted by the defendant and his wife over the plaintiff.

Judgment affirmed.   The other judges concur.