AMANDA McCLURE, Appellant, *v.* CHARLES LEWIS, JR., Respondent.

### December 11, 1877.

Where one who, though old and in ill health, is in full possession of her reason and understanding, disposes of her property to one who sustained to her no relation of trust, nor any relationship such as, in itself, implies influence, and who did not occupy the position of superior, and had no mastery over her so as to unduly influence or control her wishes, intentions, inclinations, or judgment; and where the conveyance provides an adequate support for the grantor during her life, and leaves the property

to go, after her death, to the relative who was nearest and dearest to her; and where the grantor, for a long time, remained content with the transaction; and where the facts show no such undue influence as will warrant the interference of the court, such conveyance will not be set aside merely because the grantor has become angry with the grantee and desires to rescind the contract.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

CLINE, JAMISON & DAY, for appellant: Contracts between guardian and ward which are favorable to the guardian and injurious to the ward are presumptively void. — *Garvin* v. *Williams*, 44 Mo. 465; *Yosti* v. *Laughran*, 49 Mo. 594; *Cadwallader* v. *West*, 48 Mo. 483. A trustee cannot take beneficially, by gift or purchase, from the *cestui que trust*. — Perry on Tr., sec. 195; *Coles* v. *Trecothick*, 9 Ves. 234; *Taylor* v. *Taylor*, 8 How. 199; *Espy* v. *Lake*, 10 Hare, 260. The foregoing principles may be invoked whenever there is weakness and confidence on the one side, and strength, position, and abuse of confidence on the other. — *Long* v. *Mulford*, 17 Ohio St. 484; *Todd* v. *Grove*, 33 Md. 188; *Billage* v. *Souther*, 9 Hare, 540; Story's Eq. Pl., secs. 312, 332; *Evans* v. *Llewellin*, 1 Cox, 333; *Huguenin* v. *Basely*, 14 Ves. 273; *Smith* v. *Kay*, 7 H. L. Cas. 750; *Gibson* v. *Jeyes*, 6 Ves. 266; *Baker* v. *Monk*, 10 Jur. (N. S.) 691. Inadequacy of consideration, coupled with weakness of mind, or with pecuniary distress, or circumstances of fraud, affords a proper subject for relief in equity. — *McCormick* v. *Malin*, 5 Blackf. 530, and cases cited; *Dally* v. *Worham*, 33 Beav. 154.

DRYDEN & DRYDEN, for respondent, cited: Hill on Tr. 149; *Sharpe* v. *McPike*, 62 Mo. 307; *Ames* v. *Gilmore*, 59 Iowa, 548, 549

HAYDEN, J., delivered the opinion of the court.

This is an action to set aside two conveyances, a deed and a lease, made by the plaintiff to the defendant, on the ground of fraud and of undue influence exercised by the

defendant over the plaintiff, who, it is alleged, was weak of mind. In January, 1872, the plaintiff was the owner of a farm, lying some twelve miles from St. Louis, and of a lot in that city, the two pieces of property being, as claimed, of over the value of $16,000, and composing her estate. The conveyances were executed on January 6, 1872. The deed conveyed the farm and lot in fee to the defendant, with reservation of an estate to the plaintiff for her life, the consideration in the deed being stated to be love and affection and the sum of $1. By the lease, for the consideration of $400 annual rent and the payment of taxes, the plaintiff conveyed to the defendant the farm and lot, during the life of the plaintiff, subject to a provision that if the defendant should die before the plaintiff the lease should determine. The plaintiff, an unmarried lady of about fifty years of age, had been in feeble health for some years before the execution of these conveyances, and was so at that time. It appears she was a woman of strong affections, and that the death of her two brothers, to whom she was much attached, as well as a chronic complaint with which she was afflicted, had caused mental disturbance and weakened her nervous system. The degree in which her mind was affected, whether seriously, or only remotely and slightly, as illness and trouble ordinarily affect persons of strong will and sound mind, was one of the issues in the case. Her brothers, who had been unmarried, and with whom she had lived, died, one of them in the spring, the other in the autumn of 1871, leaving to her the property which has been described; and when she executed the conveyances she was living at the house of the defendant, near the farm, the wife of the defendant being her neice. The court below dismissed the bill, and the plaintiff appealed.

A large part of the evidence in this voluminous record is of too speculative a character to be of any substantial aid as a guide to decision. The theories of witnesses as to mental condition are of but little value when specific acts, and, still more, the general conduct, of the person indicate

the state of the intellect. As there is here no evidence tending to show actual fraud, and as it cannot be fairly claimed that the defendant bore to the plaintiff any relation of special trust and confidence, the real question is one of undue influence on the defendant's part, and, as affecting this, of the plaintiff's mental condition. Proceeding to test this condition by the plaintiff's conduct, we find that of her own accord she entertained the design of making some disposition as to her property. From her own account, a plan — the details of which, it would appear, were discussed between herself on the one hand, and the defendant or his wife (her niece) on the other — was arranged, which involved the lease of the property, or a part of it, and of this plan it was one of the features that the plaintiff was to be supported in sickness and health, and taken care of during her life. The initiative towards making some disposition of the property appears to have been taken by the plaintiff. It seems that another matter of business, the execution of partition deeds, by which the plaintiff and her sister were to divide their property, held previously in common, immediately preceded the execution of the present conveyances. This partition matter the plaintiff seems to have herself undertaken, and it may be inferred that she did it as a preliminary to making some disposition as to her property. At any rate, on January 1, 1872, she seems to have been in no doubt as to her capacity to transact business, and to have been both cheerful and confident in transacting it. A few days after, on January 6, 1872, the plaintiff, and the defendant and his wife, went together from the house in the country, about twelve miles from the city, to St. Louis, and there, at the office of a conveyancer, who had previously been spoken to by the defendant in order that the deed and lease might be ready for signature, the two instruments were executed. There were no intimate relations between the conveyancer and the defendant, and the part played by the former was merely to draw the instruments

as directed, not to give counsel or advice to either party.
The testimony of the conveyancer, a highly respectable
man, of great experience, is in the case, and to him, though
the plaintiff seemed feeble, it appeared that she under-
stood the transaction, as, indeed, her own conduct shows
she did. The deeds were read slowly and carefully by the
conveyancer, in the presence of both parties, and it was at
the suggestion of the plaintiff that the clause which now
appears in the lease, to the following effect, was inserted:
" In the event of the death of said lessee before the death
of the said lessor, then this lease shall cease and deter-
mine," etc. When the lease was first read, the plaintiff
appeared disappointed that no clause to this effect was in
the lease, and so stated; and then, upon her suggestion, the
lease was redrawn, or this provision added. As to the deed,
the plaintiff says: " Mr. Babcock read the deed. I under-
stood that I was to have every thing on it as long as I lived,
and he [the defendant] was to have it only at my death."
The conveyancer understood, and it was evidently the
understanding between the plaintiff and the defendant,
though nothing to this effect was put into writing, that it
was part of the arrangement that the defendant should pro-
vide a home and its comforts for the plaintiff for her life. It
is a reasonable inference from the conduct of the plaintiff
while she was at the conveyancer's office, and just before
and afterward, that she was not in a condition of great
debility, either physical or mental, though she was undoubt-
edly ill and feeble. Still more clearly does her conduct on
reaching home, as that conduct is described by herself,
indicate that she understood the nature of what she had
done, and was satisfied, if not with all the details, at least
with the substantial result. She states that she proposed to
the defendant that he should build a house upon the lot in
the city, in which house she and her sister could live per-
manently with the defendant's family, and in which she
could have her choice of a room. This conversation, as

given by herself, shows what had been in her mind. She was infirm, and unable to take care of her household. She wished permanently to secure to herself the society of her niece and her niece's mother, and to have the comfort and protection of a household. The defendant, on his part, was to build the house, to take care of the property and manage it, and to pay the rent as agreed upon. In view of these facts, and of the further fact that the defendant, as a part of the transaction, paid her $2,000 at or about the time of the execution of the deeds, it is apparent that the consideration was not so inadequate as to make the agreement an unconscionable bargain. Still less will it appear such if the fact is considered that the niece of the plaintiff was her favorite relative, and that, according to the plaintiff's statement, this niece preferred that, in a disposition of the property, the settlement should ultimately be upon her husband, the defendant, and not upon herself. Giving its full weight to the distinction between inadequacy as a substantive ground of relief and as evidence tending to prove undue influence, it must be pronounced that the inadequacy here, if any there was, is not sufficient to indicate imposition. It is to the situation at the time, not to the result, that regard must be paid; and, as matters then stood, the plaintiff, by her disposition, accomplished a double object, — providing, in the first place, for an adequate support for herself during life, and, in the next place, leaving her property to go, after her death, to the relative who was nearest and dearest to her. A disposition of his property that deprives the donor of his estate and leaves him helpless is one thing, a disposition that provides for him during his life, and rationally disposes of his property upon his death, another; and it is with reason that the courts have, in cases of alleged undue influence, made a broad distinction between the two. *Harrison* v. *Guest*, 6 De G. M. & G. 424; *Hadley* v. *Latimer*, 3 Yerg. 537; *Nace* v. *Boyer*, 30 Pa. St. 99; *Bowles* v. *Wathan*, 54 Mo. 261.

The plaintiff continued to reside with the defendant, and to be provided for by him; allowed him to build the house upon the lot which she had conveyed to him, at an expense of over $7,000, and then selected a room in it as she purposed; and in this house she lived, with her sister and the defendant's family, until the summer of 1875. During this time she received the rent according to the lease, while the defendant paid the taxes and other expenses of the property. Family difficulties occurring, the plaintiff and defendant fell out, and this suit was brought in November, 1875.

The conduct of the plaintiff, as described, sufficiently shows her intelligence, and that she understood the nature of her acts. That she was a woman of weak mind, in the sense of being naturally infirm of purpose, or that she was in a state of subjection to the will of those around her, is a theory unsupported by facts, as stated either by herself or by others. Her own testimony, and that of her sister and their mutual relations, indicate that the will of the plaintiff habitually overbore that of the sister, notwithstanding the latter was a woman of discernment. It is true that the plaintiff's intelligence and force of will would not be decisive if it were shown that the defendant had such a mastery over the plaintiff as to control her wishes and intentions. But here, in the first place, was no such relationship as in itself implies influence (*Crowe, Admr.*, v. *Peters*, 63 Mo. 429), and, in the next, were no facts showing, or even tending to show, that the defendant swayed the mind of the plaintiff so as to prevent her from exercising her judgment and carrying into effect her own intentions. There are no indications that she looked up to him, and he certainly did not occupy towards her the position of a superior. He was a young man, without regular occupation, and she was not accustomed to be guided by him or to commit business to his care. The springs of her action were, apparently, affection towards her relatives, and a conviction as to what, in her peculiar situation, was most conducive to her own

interests.    Thus, not insisting upon a single substantive basis of action on the plaintiff's part, but giving due weight to subsidiary grounds, we still find that there was no subjugation of the grantor's mind, no substitution of the purpose of another in place of her own.    Her subsequent conduct confirms this view, and shows that, after ample opportunity for reflection, she was, and for a long time remained, contented with her bargain and satisfied to enjoy its fruits.

What has already been said serves to distinguish this case from those cited by the appellant.    It is not necessary to point out differences as obvious as those existing between the facts here and the facts in the cases of *Garvin's Administrator* v. *Williams*, 44 Mo. 465, *Cadwallader* v. *West*, 48 Mo. 483, and *Yosti* v. *Laughran*, 49 Mo. 594.    So in the case of *Rankin* v. *Patton*, 65 Mo. 378, which at first blush appears to go far; the grantor was a young girl, who had little knowledge of the value of property, or of the facts of the situation ; the conveyance was one which was suggested, and in great part procured, by another ; the case was one where no consideration passed, where confidential relations existed, where the subordinate acted in deference to the superior, and, finally, where, as the court found, the transaction was such as would not satisfy any motive of gratitude or affection.

The decree dismissing the bill is affirmed, with the concurrence of all the judges.