JAMES H. REED, Adm'r, etc., Appellant, v. THOMAS H.
    CARROLL, Respondent.

**Kansas City Court of Appeals, December 4, 1899.**

1. **Gifts: SOUND MIND: EVIDENCE.** The evidence in this case fails
   to show that the donor of a certain check was of feeble and unsound
   mind, although he was crippled, aged and physically enfeebled.

2. ————: **FIDUCIARY RELATIONS: PRESUMPTION: PRINCIPAL
   AND AGENT.** Where a fiduciary relation exists between the donor
   and donee, the law scrutinizes with jealousy a gift from the former
   to the latter and such transaction is presumptively void and the
   burden is on the donee to show its absolute fairness both at law and
   in equity; and in transactions between principal and agent this rule
   applies in this state.

3. ————: **UNDUE INFLUENCE: EVIDENCE.** Evidence attending
   the giving of a check from a principal to his agent is reviewed and
   the transaction is found to be free from the taint of covinous influ-
   ence and the presumption of undue influence is fully rebutted and
   overcome.

Appeal from the Boone Circuit Court.—*Hon. J. A.*
                *Hockaday,* Judge.

AFFIRMED.

*C. B. Sebastian, Webster Gordon* and *W. M. Williams*
for appellant.

(1)   An administrator may recover money or property,
which his intestate has been induced through fraud or undue
influence to give away.   Hall v. Knappenberger, 97 Mo. 509;
Teegarden v. Lewis, 35 N. E. Rep. 25.   (2)   It is not neces-
sary for plaintiff to show that John Carlisle was an imbecile,
or that he was unable to understand what he was doing.   Hall,
Adm'r, v. Knappenberger, 97 Mo. 509; Teegarden v. Lewis,
33 N. E. Rep. 763; Ikerd v. Beavers, 7 N. E. Rep. (Ind.) 326.
(3)   The law presumes that a gift made by an old and feeble

man to a party occupying a relation of trust and confidence towards him was obtained by undue influence. The burden is upon the donee to rebut this presumption. Cadwallader v. West, 48 Mo. 483; Yosti v. Laughran, 49 Mo. 594; Martin v. Baker, 135 Mo. 495. (4) The court below, under the evidence, should have declared the gift to defendant void and required him to restore to the estate the sum so obtained by him.

*North T. Gentry* and *Wellington Gordon* for respondent.

(1) If a person understands the nature of the business in which he is engaged and the effect of what he is doing, his acts are valid, and this is true though the mind of such person may be impaired by age and disease. Cutler v. Zollinger, 117 Mo. 101; 1 Parsons on Contracts [7 Ed.], 383; Bispham on Equity [4 Ed.], 291; Kerr on Fraud and Mistake, 145. (2) As to the soundness of the mind of Mr. Carlisle, we do not think this court can hesitate for one moment in saying that his mind was not only good, but unusually strong. (3) Plaintiff then sets up the plea that Mr. Carlisle was over-persuaded and unduly influenced. But again plaintiff relies on his imagination; and we are left to (?) Undue influence, like fraud, can not be presumed; it must always be proved by good, reliable and substantial evidence. Doherty v. Gilmore, 136 Mo. 414; Wait on Fraud. Conv. [2 Ed.], sec. 5; McFadin v. Catron, 138 Mo. 219. Even admitting (which we do not) that defendant did have an influence over Mr. Carlisle, there is no evidence that he exercised such influence. "It is not the existence, but the exertion of that improper influence which invalidates the transaction." Sunderland v. Hood, 84 Mo. 297; Brinkman v. Rueggesick, 71 Mo. 556; Doherty v. Noble, 138 Mo. 32; McKinney v. Hensley, 74 Mo. 332; Jackson v. Hardin, 83 Mo. 185.

SMITH, P. J.—In the year 1895 John Carlisle departed this life, childless but testate. Subsequently, an action was begun by persons interested in the probate of his will to contest the validity thereof; and pending the contest the plaintiff, Reed, was appointed administrator of the testator's estate.

In 1897 the plaintiff brought this suit against defendant, the object of which was to set aside a gift of one thousand dollars made by the testator to the defendant, and to recover judgment against the latter therefor, etc. The petition alleged, amongst other things:

"On the 4th day of October, 1894, the defendant did fraudulently induce the said John Carlisle to pay and deliver to him one thousand dollars in cash belonging to said Carlisle, and that the said John Carlisle, deceased, was at that time nearly ninety years of age, infirm of body, and weak of mind, and was easily influenced and controlled; that he was living with defendant's family, and that defendant was his confidential agent for the transaction of all his business, and that defendant by virtue of his position as the confidential agent of the said Carlisle, and in consequence of his childishness and by undue persuasion did obtain from him the said one thousand dollars, without any consideration therefor, as a gift." This allegation was put in issue by the denial of the answer.

It appears that the testator was an illiterate man. He could neither read nor write. Notwithstanding this disability he had accumulated an estate valued at from twenty-five to thirty thousand dollars. He had been twice married. The death of his last wife preceded his own by only about nine months. After her death he quit keeping house and resided with defendant from that time until his death. The defendant's wife was the niece of his first wife. It appears that the testator at this time was somewhere between eighty and ninety years old. He was suffering from an old dislocation of his hip, and was afflicted with a running sore on one of his legs and with eczema. He could not get about without difficulty.

Physically, he was rather helpless. He required considerable nursing and attention. It is not disputed but that the defendant and his family were at all times kind and attentive to him while he lived with them.

The defendant owed him a note which was secured by deed of trust on the farm on which he then resided. The amount then due thereon, according to the testimony of the plaintiff's witnesses, was about three thousand dollars; and according to that of defendant's, it was only about three hundred dollars. The testator, after taking up his residence with defendant, executed and delivered to him a release of said deed of trust. A contract in writing was also entered into between deceased and the defendant, whereby the latter, in consideration of said release, bound himself to support the former during the remainder of his life.

Two or three months after the deceased went to reside with the defendant, he discharged the agent whom he had formerly entrusted with his business. He then employed Mr. Gentry to write his will, in which defendant was named as executor thereof; and also a contract, by which, in consideration of five dollars, the defendant was relieved from his obligation theretofore entered into for the support of the testator during his life. Twelve days later he executed a power of attorney to defendant, under which the latter was authorized:

"For me and in my name, place and stead to grant, bargain and sell, convey and confirm to whomsoever he pleases, any and all real estate owned by me in Benton county, Arkansas, and in Boone county, Missouri, for such price and on such terms and to such person or persons as he may think best, also power and authority is given to said Carroll to collect and receive and receipt for me and in my name, place and stead, any and all notes and accounts, mortgages and deeds of trust due me now or hereafter may become due or owing to me, etc. In less than a month after this, the testator gave the defendant

a check on the bank where he had his money deposited "for all the money I have in your bank." This check was presented and paid to defendant, and the money so drawn was placed to the credit of T. H. Carroll & Co. The defendant after receiving the power of attorney took into his possession all the property, money and choses in action of the testator. He seems from thenceforth to have acted as the *alter ego* of the testator.

On October 4, 1894, the defendant, under the name of T. H. Carroll & Co., signed a check in his own favor for one thousand dollars on the bank in which he had the funds of the testator deposited. It seems that this check was drawn by Dr. Hulen, the physician of the testator at the latter's instance and while the defendant was not present. It was, however, handed to defendant by the testator, who signed it, as already stated, and drew the money thereon. About ten days after this, the testator died. Defendant presented for allowance against his estate an account for all the services of every kind which he had rendered him during his lifetime, claiming therefor some fifteen hundred dollars, of which five hundred dollars was allowed and paid to him by the plaintiff herein.

It is not denied that the testator was much enfeebled by age and disease at the time the several transactions took place, to which allusion has been made by us. It can not be pretended that the check in dispute was given by the testator to defendant to discharge any indebtedness of the former to the latter for services rendered. Any inference of this kind would be negatived by the conduct of the defendant in procuring the allowance and payment of his account for such service. The delivery of the check was but a gift; and nothing more nor less. The amount of the gift was considerable and at the time of its bestowal the defendant occupied a fiduciary relation to the testator; and the question now is, can it be upheld?

The testimony adduced by plaintiff tends to prove that the mind and body of the testator were in an alike enfeebled

condition, and that he thought and spoke as a child. A great cloud of witnesses for the defendant, some of whom had been acquainted with the testator since he came to the state in 1838, testified that his mind was unimpaired, notwithstanding his great age; that he possessed an unbending will which was difficult to influence. Two of these witnesses were physicians who had attended him in his illness at different times and their concurrent testimony was to the effect that the vigor of his mind had not been impaired. The complicated and various business interests which he had successfully conducted, both within and without this state, very conclusively demonstrated his mental capacity. His judgment and discrimination seems to have been excellent. He bought and sold real and personal property; managed a stock farm; loaned money on real and personal security; attended in person to much of his business, which extended to two states; carried on a business correspondence with one or more agents in another state. In fact, up to the time of the death of his second wife he seems to have been a very active, painstaking and successful business man—and it nowhere appears that after his wife's death that he was less capable of managing his own business than he had been for some years prior to that event. The bodily infirmities with which he suffered, after he came to live with defendant, were chronic and of many years duration. The overwhelming preponderance of the evidence was to the effect that notwithstanding his physical ailments that his intellectual vigor remained unimpaired. In the face of this, how can we conclude that his mind was weakened by disease? This inference finds no support either in the opinion of his neighbors, acquaintances and friends, who gave their testimony, or in the history of his business life. Though his body was weak his mind maintained its wonted vigor. Some of the old trees of the forest decay first in the top, and others in the trunk—and this case was of the latter kind. Although at the time the transaction in question took place the testator, it seems, was

far advanced in years, a cripple and afflicted with a sore on one of his legs, and a cutaneous disease, yet, with all this, his mind was clear and his memory good. We must conclude from the great weight of the testimony that his mind was not weak and enfeebled.

In those cases where the confidential relation exists, as between parent and child; guardian and ward; principal and agent; attorney and client; patient and physician; trustee and beneficiary, and the like, the law not only watches over the transactions of the parties with great and jealous scrutiny, but it often declares transactions absolutely void which, between other parties, would be open to no exception. The rule in regard to the bestowment of gifts and donations where a trust or confidence exists between the parties, is well settled in this state. It has been declared that, where an old and feeble man, whose mind is weakened by disease, bestows a gift, where the relation of trust or confidence exists, it is presumptively void— and the burden is upon the donee to rebut this by showing the absolute fairness and validity of the gift, and that it is entirely free from the taint of undue influence. This sound and wholesome doctrine applies as well to suits of law as to proceedings in equity, and is as broad in its scope as the existence of the confidential and fiduciary relation. The rule stands upon a general principle, applying to all the variety of relations in which dominion may be exercised by one person over another. Hall v. Knappenberger, 97 Mo. 509; Cadwallader v. West, 48 Mo. 483; Gay v. Gillilan, 92 Mo. 250; Street v. Goss, 62 Mo. 226; Yosti v. Laughran, 49 Mo. 594; Dunscomb v. Richards, 46 Mich. 166, and authorities there cited.

It would seem, according to the cases just cited, that in this state the relation of principal and agent is embraced in the same category as guardian and ward; physician and patient; parent and child; attorney and client, and trustee and beneficiary; and that the transactions between them are subject to the same rules of equity. Though in other jurisdic-

tions it is different, where it is held that in cases of gifts by the principal to an agent that no presumption exists against the gift. Ralston v. Turpin, 25 Fed. Rep. 7; Pressley v. Kemp, 16 S. C. 334. In a note to the first of the last cases cited it is said that confidential relations are divided into two groups. The first of which imply control over the will of another, such as guardian and ward and trustee and beneficiary, in which cases dealings between the parties are subject to an adverse presumption because of the opportunities and temptations which the relationship affords for the improper exercise of the dominion thus acquired. The second group comprises relations of trust and confidence, such as principal and agent, and partners, in which cases dealings between the parties are closely scrutinized because of the opportunities and temptation which the relation affords for the abuse of the trust and confidence. In the latter, confidence alone exists while dominion is not implied. In cases of gift by a person sustaining any relation in which dominion is implied there is a presumption of law against validity. In case of a gift by a principal to an agent the *onus* is on the party assailing it. Uhlich v. Muhlke, 61 Ill. 499.

But, as we understand it, this distinction has not been recognized in this state, and therefore we are constrained to hold that, though the relation between the testator and defendant was only that of principal and agent, the gift made by the former to the latter is presumtiously void and can not be upheld by us, unless that presumption is repelled by evidence showing that it was freely and voluntarily made without the semblance of a suspicion of covinous influence. Has he, by his evidence, cleared the transaction of the imputation of the undue influence which the law otherwise conclusively presumes?

It may be that the mind of the testator was more or less enfeebled by age and disease, yet we can not think, as already stated, that this went to the extent of mental imbecility or

unsoundness. If the testator was, at the time of the bestowal of the gift, of sound mind and clearly understood the nature of the transaction and exercised a free will under no restraint or undue influence, then the gift must be upheld. The evidence, as already stated, discloses that the testator was worth from twenty to thirty thousand dollars. He had no wife, child or other lineal descendent. His next of kin were nephews and nieces. Some of these were *persona non grata*. He had voluntarily chosen to reside with the defendant, whose wife was the kindred, by blood, of his first wife, but not to him. In the family of defendant he found a comfortable home. Here, friendly hands tenderly cared for all his physical wants and necessities; here, the helpless old cripple found those upon whom he could lean for support. The whims and caprices of one suffering from various ailments were humored. He was furnished meat, drink, medicine and nursing when required. A son or a daughter could not have been more attentive to his wants than the defendant and his wife were. With them this old man found sympathy and society not afforded by his own home, after the death of his wife. The defendant cared for his business interests with signal fidelity. There was the evidence that a warm friendship had long existed between deceased and the defendant and his family. It is not surprising that the testator should, under these circumstances, bestow on the defendant the gift in question out of the abundance which he had. It was an act no doubt prompted by the nobler impulses of a grateful heart. There is nothing perceived in the transaction tainting it with suspicion. It was not conducted in secret. The medical adviser of the deceased filled out this check, with five others to his relatives, at the request of the deceased.

The drawing and delivery of these checks seems to have been the unbiased spontaneous act of the testator's own mind, acting voluntarily and without solicitation of the defendant.

A gift so made under these circumstances does not seem to us to have been in the least unreasonable.

But it is contended that the defendant had previously rescinded an obligation of the defendant to support him during his natural life and that coupling that transaction with the gift of the check gives rise to the suspicion of undue influence. The evidence discloses that the testator had received considerable sums of money from his first wife which had augmented his fortune. It appears that the deceased frequently referred to this in his conversations with the kinsmen of his first wife and in doing so he always assured them that at his death he would make a liberal return of it to them. It further appears from the evidence that the testator's reason for releasing the deed of trust and the cancellation of the contract for support was to give the defendant's wife, the niece of the testator's first wife, something. This was doubtless in furtherance of the previously expressed intention on the part of testator for the reasons already stated to give part of his property to those of kin to his first wife.

Nor does the fact that defendant presented an account against the estate of testator for services rendered, satisfy us that the gift of the check was induced by the covinous influence of the defendant. It may be, and probably is true, that if this suit had not been brought that the defendant would never have presented the account referred to against the estate of the testator. He probably thought that if he was deprived of the gift that he would demand pay for the services he had rendered the testator. If the check was a gift, as we think was the case, its acceptance was no bar to the defendant's right to recover for the services rendered by him to the testator. It does not appear that the check was given in discharge of any indebtedness of the testator to defendant. There is no connection between the gift and the account. They are independent of each other. Taking all the evidence and natural inferences

together, we think the presumption of undue influence has been fully rebutted and overcome.

Nothing is perceived in the record before us to justify a disturbance of the decree of the circuit court, which accordingly will be affirmed.   All concur.