## JOHN GRIESEL, Administrator, etc., Respondent, v. JOSEPH P. JONES, Appellant.

### Kansas City Court of Appeals, February 4, 1907.

1. **ADMINISTRATION: Cause of Action: Limitation.** If an action accrues after the death of the decedent in favor of his administrator, the Statute of Limitation does not begin to run against it until the administrator is appointed, since a cause of action does not exist unless there be a person in existence capable of suing and being sued; but if the cause of action accrued during the life of the decedent his death does not stop the running of the statute of limitation.

2. ———: **Transfer: Trusts and Trustees: Action.** If a father transfer his property to his son for the benefit of the former's heirs, there is no action in the father's administrator to recover the property, since the son becomes a trustee and the heirs beneficaries of the trust, and the action for the wrongful conduct of the trustee is in the heirs.

3. ———: ———: ———: **Trustee's Fairness.** Where a father makes a power of attorney to a son to manage his estate for him and later transfers all his property to the son, it devolves upon the son to show by clear and convincing testimony that the transfer was made and was the free expression of the will and intention of the donor and not the result of any improper practice on the part of the donee.

4. ———: ———: ———: ———: **Jury.** The evidence relating to a gift from a father to a son who was also his business manager, being conflicting as to the undue influence of the son and the mental capacity of the father, these questions were for the jury.

5. ———: ———: ———: ———: **Conversion: Action.** A transfer from a father to a son who is also his business manager is a nullity if secured by the means of undue influence or the overreaching of the father's mental weakness, and if after the father's death the son proceeds to use the same for his personal interest, an action for conversion will lie against him.

6. ———: **Debts: Adult Heirs: Title to Personalty.** Where there are no creditors of an estate and the heirs are all adults and agree to a "domestic distribution" there need be no administrator, but this is the exception, since personal property descends to the administrator and the legal title is in him, and each heir has a right to demand an administration of the estate.

7. ———: Transfer: Trusts and Trustees: Trustee's Fairness: Instruction. Instructions submitting an issue of the fairness of a trustee in accepting a gift from his father are reviewed and approved.

8. ———: Letters: Collateral Attack. The illegality in the grant of letters of administration cannot be invoked in a collateral proceeding.

Appeal from Dade Circuit Court.—*Hon. Levin W. Shafer,* Judge.

AFFIRMED.

*S. A. Payne* and *Thurman & Timmonds* for appellant.

(1) Letters of administration issued in violation of law are void. The statute requires letters of administration to be granted, first, to the husband or wife; second, to those entitled to distributive shares of the estate. If the persons named in the first and second classes do not appear within thirty days after the death of the deceased, and apply for letters, then the court is authorized and required to issue a citation to the persons entitled to administer and if such persons fail to administer, the court is authorized to appoint some suitable person. R. S. 1899, secs. 7, 8; State ex rel. v. Fowler, 108 Mo. 470; Mulamphy v. County Court, 6 Mo. 564. (2) Where there are no debts, the heirs of the deceased have the beneficial interest in the property of the ancestor. An administrator under such circumstances would be a mere naked trustee. Under the rule well recognized at this time the heirs could sue, and enforce their beneficial interest in personal property without the aid of an administrator. Ricks v. Hilliard, 45 Miss. 359; Watson v. Byrd, 45 Miss. 480; Glover v. Hill, 85 Ala. 41; Atkin v. Atkin, 78 Ga. 24; Roberts v. Messenger, 134 Pa. St. 298; Foote v. Foote, 61 Mich. 181; McCracken v. McCaslin, 50 Mo. App. 87; McDowell v. Orphan School, 87 Mo. App. 34. (3) The law does not permit

one to do by indirection what he cannot do directly. Hardaway v. Drummond, 73 Am. Dec. 730. The law assists the vigilant and not those who sleep on their rights. Mathias v. O'Neil, 94 Mo. App. 520. (4) This question of limitations is involved in the sixth instruction given for the plaintiff and the third instruction asked by defendant and refused by the court. The one declares that the Statute of Limitations is no bar to the right of plaintiff to recover and the other instruction is a converse of this proposition. We insist that the doctrine that the Statute of Limitations does not run against an estate until an administrator is appointed, is based upon the rights of creditors, and proceeds upon the theory that there is no one in existence, that the creditor can sue. Therefore the lapse of time ought not to bar such creditor. The reason for this rule does not apply to an heir claiming an interest in the property of the ancestor. (5) The defendant's demurrer to the testimony at the close of the plaintiff's case should have been sustained. The plaintiff alleged in his petition that the money, notes and debts sought to be recovered in this action were obtained from Jesse Jones during his lifetime under and by virtue of a power of attorney. There is no testimony in this record in proof of that allegation. The plaintiff cannot be permitted to recover on any other theory than that disclosed by the allegations in his petition. The record is without testimony to support the allegations in the petition. (6) Instruction numbered 4 ought to have been given on any theory of the case. Water Co. v. Aurora, 129 Mo. 579. (7) The relation of father and son does not create a confidential relation such as will cast the burden of proof on the donee so as to require such donee to show the fairness of the transaction surrounding the gift. Studybaker v. Cofield, 159 Mo. 597; Carter v. Dilley, 167 Mo. 564; Fitzpatrick v. Webber, 168 Mo. 562; Tompkins v. Atkins, 25 Fed. 7; Uhlich v. Muhlke, 61 Ill. 499.

*Henry Brumback* and *William B. Skinner* for respondent.

(1)   In this case the cause of action did not accrue to any person who had capacity to sue, until an administrator of the estate of Jesse Jones deceased had been appointed, and the Statute of Limitations did not run against the administrator during the time there was no administration, it would only commence from the grant of letters.   Polk v. Allen, 19 Mo. 469; Administrator v. Botes, 39 Mo. 301; White v. Blonkenbecker, 92 S. W. 504; Bucklen v. Ford, 5 Barb. 393, 22 Cent. Col. 2405.

(2)   While probate courts are of special and limited jurisdiction the powers and duties conferred upon them are given to no other courts, and over such matters and proceedings as are conferred upon them, among which is the granting of letters of administration, the jurisdiction is general and exclusive.   Their judgments and orders, when acting within their authority, are conclusive and are no more subject to collateral attack than are those of courts of general jurisdiction.   Brawford v. Wolfe, 103 Mo. 395; Johnson v. Beazley, 65 Mo. 254; Vermillion v. McClare, 89 Mo. App. 61.   (3)   In express trusts the Statute of Limitations does not begin to run until trust is denied by some open act of trustee.   In implied trusts it begins to run as soon as plaintiff knows the facts.   Smith v. Ricords, 52 Mo. 581, 56 Mo. 553.

(4)   In all cases where confidential relations exist and a gift be bestowed, it is presumptively void and the *onus* of establishing the absolute fairness of the given transaction is cast upon the recipient of such gift.   Gay v. Gillin, 92 Mo. 263; Hall v. Knappenberger, 97 Mo. 511; Reed v. Carroll, 82 Mo. App. 108; Street v. Goss, 62 Mo. 229; Pitman v. Elmore, 93 Mo. App. 596; Cadwalader v. West, 48 Mo. 497; Garvin's Admr. v. Williams, 44 Mo. 470.

JOHNSON, J.—Action brought by the administrator of the estate of Jesse Jones, deceased, to recover the value of certain personal property alleged to have been converted by defendant to his own use. A trial before a jury resulted in a judgment for plaintiff and defendant appealed.

Jesse Jones died intestate at the home of defendant, his son, in Dade county on January 24, 1890. He left a widow and a number of children and grandchildren, all of legal age. No administration of his estate was had, nor were letters applied for or issued until in 1903, when letters were issued to the present administrator by the probate court of Dade county. Decedent left no debts and the expenses of his last sickness and funeral were borne by defendant.

Prior to 1876, Mr. Jones lived with his family consisting of his wife and their eleven children in Dade county where he owned about 1,100 acres of land. For some time the relations between him and his wife had been tempestuous. One of their quarrels culminated in an affray in which Mr. Jones was shot in the arm by one of his sons. After this, he conveyed the land to Mrs. Jones who divided it equally among their children and he separated from his family and moved to Stone county, taking with him some personal property consisting of money, notes and accounts. He lived in Stone county until the fall of 1889 when, being old and in poor health, he returned with defendant to Dade county and resided with him until his death. During his residence in Stone county, he made occasional visits to his family and became in a measure reconciled to his wife and most of his children, but never resumed marital relations with his wife. Defendant, during the separation, appears to have been more attentive to his father than were the other children and some three months before his death the father executed and delivered to defendant a general

123 App—4

power of attorney which conferred full authority to transact all of his business. His property then consisted of $1,500 in cash and about $3,000 in notes and accounts, some of the former being secured by mortgage or deed of trust. About two months after giving the power of attorney and one month before his death, Mr. Jones assigned in writing and delivered to defendant all of the notes and accounts and delivered all of the money to him. It is claimed by defendant that this transfer of property was declared by the father at the time to be a gift to defendant and his children, and in this defendant is corroborated by other evidence. On the other hand, it is contended by the other children of decedent that the transfer was made when their father, enfeebled in body and mind, was suffering under the undue influence of defendant and, second, that the transfer was not made as a gift to defendant and his childen, but was declared by the grantor to be made for the purpose of avoiding the expense of an administration and defendant was directed at the time to collect the assets after the death of the grantor and then distribute the estate according to law.

Defendant insists that, in any view taken of the facts, plaintiff cannot maintain this action for the reason that no necessity existed at any time for the appointment of an administrator, the heirs being of full age and the estate free from debt; and further argues that if any cause of action arose from the acts of defendant it belonged to the heirs alone, is barred by the Statute of Limitations and cannot now be prosecuted through the medium of an administrator.

If a cause of action accrued after the death of the decedent in favor of the administrator of his estate, it is not barred by limitation because the statute did not run during the time there was no administration and, therefore, did not begin to run until the grant of letters to plaintiff in 1903. As was said in Marsteller v. Mar-

steller, 93 Pa. 350, "A cause of action does not exist unless there be a person in existence capable of suing or being sued." The rule is different where the cause of action has accrued during the life of the decedent because in such case there is a person in existence capable of suing and his death will not stop the running of the statute. It must be confessed that much may be said against the propriety of suffering a right of action to continue for an indefinite time on account of the neglect or refusal of those interested in the estate to procure the appointment of an administrator, but the principle stated has the support of authority in this and other jurisdictions and we feel constrained to apply it. [Polk's Administrator v. Allen, 19 Mo. 467; Schlueter v. Albert, 39 Mo. App. 154; Little v. Reid, 75 Mo. App. 266; Stanton v. Gibbons, 103 Mo. App. 264; Riner v. Riner, 166 Pa. St. 617; Woerner on American Law of Admr., sec. 401.]

Do the facts in evidence disclose any such cause of action in favor of the administrator? In answering this question, it first must be ascertained whether or not the evidence will reasonably support the conclusion that prior to the time of the death of Jesse Jones the title to the property in question was vested in him.

Taking plaintiff in one of his positions, i. e., that if a transfer of the property was made to defendant it was not as a gift to him and his children, but was made for the benefit of the heirs of the grantor, it is difficult to perceive any ground on which a conclusion could be founded that a cause of action could inure to the administrator with respect to that property. The effect of such transfer would have been to create a trust of which defendant would have been the trustee and the heirs of the grantor, the beneficiaries; and the assignment and delivery of the notes and money to defendant accompanied by the declaration of the trust of this character would have divested the trustor of all title to the subject of the

trust, and any right of action that accrued after the death of the trustor by reason of the wrongful conduct of the trustee belonged to the heirs as beneficiaries of the trust and not to the administrator of the trustor's estate.

It is clear that plaintiff cannot maintain this action on the theory just discussed and we now turn to the other position advanced by him that no transfer was made in fact because defendant procured the assignment and delivery of the notes and the possession of the money by the exertion of undue influence over the mind of his father at a time when the latter was sick and enfeebled in body and mind and that defendant's acts in procuring the transfer constituted an abuse of a relation of trust and confidence that existed between him and his father by virtue of the power of attorney in evidence. Unquestionably, defendant, in accepting the power of attorney which conferred on him plenary authority to manage and control his father's business affairs, placed himself in a position of trust and confidence respecting the subject of the power and, in asserting that during the existence of that relation his father made him a gift of his property, the burden devolved on defendant to show by clear and convincing testimony that such gift was made and was the free expression of the will and intention of the donor, and was not the result of any improper practice on the part of the donee.

The great age and physical infirmity of the father had compelled him to withdraw from business affairs and to entrust the care and management of his property to another, and the son who undertook that task became bound both in law and morals to observe the utmost good faith and fairness in its performance. Duty told him not to use the confidence reposed in him to selfish ends and the very ease with which he could clothe in verisimilitude a perversion of his father's purposes is reason enough for imposing on him the burden of clearly

exculpating himself from any imputation of unfairness. [Gay v. Gillilan, 92 Mo. 263; Hall v. Knappenberger, 97 Mo. 509; Reed v. Carroll, 82 Mo. App. 102; Pitman v. Elmore, 93 Mo. App. 592.] The evidence adduced by defendant very strongly tends to establish his good faith. It shows that when the gift was made the mind of the donor was unimpaired. A motive for the act appears in the fact that defendant had been kind and attentive to his father while all others in kinship with the latter had treated him with neglect. Not only did defendant refrain from seeking any benefit to himself, but when his father's intention was disclosed attempted to dissuade him from giving it effect and besought him to leave the property to a charitable institution if he would not permit the other heirs to share in it.

On the other hand, plaintiff introduced substantial evidence tending to show that when the transfer was made the old man's mind was enfeebled and irrational. That in the hands of defendant he had become as clay in the hands of the potter and was manipulated to assign and deliver the notes and money to defendant by the specious pretext that it would aid defendant in the management of the property. Acts and declarations of defendant made after his father's death are disclosed which are inconsistent with his claim of ownership of the property by gift. We do not deem it important to discuss this evidence in detail and will content ourselves with saying that, if believed, it is sufficient to sustain the inference that the transfer of the property was procured by defendant by the abuse of confidence at a time when his father was unable to make a rational and intelligent disposition thereof.

Thus, it appears that the good faith of the transfer depends on the solution of a controverted issue of fact and we pass to the consideration of questions that arise under the hypothesis that defendant procured the trans-

fer by an abuse of confidence and by the employment of undue influence over a diseased and weakened mind.

The result of such conduct on the part of defendant was to destroy utterly the transfer as an operative act. Being the product of a species of fraud, it was a nullity. It did not divest the grantor of his title to the property and at his death the property descended to his estate. The authority of defendant under the power of attorney ceased with the death of his father so that neither in virtue of that instrument nor of the attempted transfer of the property, did he acquire any right to intermeddle with the estate; and by his act in retaining possession of the notes and money after his father's death and in proceeding to administer them for his own benefit defendant may be said to have converted the property to his own use and his wrongful conduct constituted a cause of action against him.

But in whose favor? Defendant argues that it belonged to the heirs because all of them were of lawful age and the estate had no debts and, in support of that contention, cites authorities of which McCracken v. McCaslin, 50 Mo. App. 85, and McDowell v. Orphan School, 87 Mo. App. 386, are fair examples. In the first-mentioned case, the heirs of the intestate met and made distribution of the estate among themselves, after which one of them procured letters of administration to be issued by the probate court. The case came to this court on appeal from an order sustaining a motion to set aside the letters on the ground that no necessity for an administration existed because there were no debts against the estate and the heirs, all being of legal age, had agreed on a division thereof. We held in an opinion written by ELLISON, J.: "Where there are no creditors and the heirs are of age, an administrator would be a mere naked trustee and it would seem idle as well as a waste of the estate to go through the form and expense of administration *against the will of the heirs,* as evidenced by their

settlement and distribution of the property among themselves. When under such circumstances a settlement and domestic distribution is made without fraud or mistake, there is no necessity for administration." And in McDowell v. Orphan School, supra, we held that while as a general rule the title to personal property left by an intestate vests in the administrator of his estate, the rule has its exceptions. That an administrator is but the representative of others, his estate is *"in autre droit,"* and when there are no creditors to represent and, as in that case, the sole heir was of lawful age, the equitable interest of the latter in the estate should be regarded as equivalent to the whole title and enabled its owner to maintain an action in his own name with respect to the estate without going through the useless and expensive formality of an administration. In Richardson v. Cole, 160 Mo. 372, the Supreme Court approved the principle enunciated in these cases and without referring to other decisions we will treat it as being firmly settled in our jurisprudence.

But it must be borne in mind that this principle is an exception to a general rule likewise firmly settled by a line of decisions in this state. Ordinarily, the entire title to personal property left by an intestate vests in the administrator of his estate. "And as no title to the personal estate vests in the next of kin, they can obtain their distributive shares only through administration." "Nor can the heir maintain the action even though he be the sole distributee of the estate." [State ex rel. v. Moore, 18 Mo. App. 406; Smith v. Denny, 37 Mo. 20; Becraft v. Lewis, 41 Mo. App. 546; Green v. Tittman, 124 Mo. 372.]

What is the condition under which an exception to this general rule should be permitted? Obviously, it should embrace these three elemental facts: First, the absence of debts against the estate; second, the legal age of each of the heirs entitled to share in its distribu-

tion; and, third, a unanimity among them as expressed by their agreement or acts to dispense with an administration. In the absence of any one of these three elements, it cannot be said the title vested in the administrator is a mere naked trust. If creditors exist, they have the right to an administration of the estate in the manner provided by law. If any of the heirs is of nonage, he cannot consent to a "domestic distribution" and his right to the protection of an administration cannot be contracted away by the others in interest and, lastly, it may be stated as a self-evident proposition, that no heir *against his will* can be deprived of the benefit of administration. He may fear the possibility that in course of time some one may come forward with a fictitious demand against the estate relying for success on the fact that the evidence by which it could have been refuted has perished, or he may prefer not to attempt to make an agreement with the other heirs for a division of the estate, but to let the law take its course. He cannot be coerced into an agreement nor be deprived of the protection of an administration except by consent.

Applying these principles to the case in hand, we must find against the contention of defendant that no necessity existed at any time for the appointment of an administrator and that the heirs of the intestate were the only parties who could maintain an action for the conversion of the estate. Aside from the fact that defendant, who is an heir, was not a party to any understanding among the heirs to dispense with an administration, we find no evidence that even remotely tends to show that the other heirs either by agreement or conduct consented to a "domestic distribution" of the estate. They are not here asserting any right of action in themselves and we know of no reason why they should be denied the right they are exercising of having their father's estate administered according to law.

It follows from the views expressed that plaintiff

Griesel v. Jones.

was entitled to go to the jury on the issues of fact involved in the contention that the transfer of the estate was procured by undue influence and was an abuse of confidence on the part of defendant, and was not entitled to recover on any other theory presented by the facts in evidence. In the instructions given on behalf of plaintiff, the right to recover is not enlarged beyond the scope to which we have found it to be restricted by the rules and principles of law discussed. The instructions given fairly and correctly presented the issues to the jury. Those asked by defendant and not given were properly refused. Defendant urges a number of objections to the instructions and to the rulings of the learned trial judge in the admission of evidence, a discussion of which would unduly lengthen this opinion and serve no useful purpose.

One other point made by defendant will be noticed. It is argued that the grant of letters of administration to plaintiff is illegal because he is not an heir and did not at the time reside in Dade county and no citation was served on the heirs residing in that county, nor did such heirs waive their right to administer. It has been held repeatedly that illegality in the grant of letters of administration cannot be invoked in a collateral proceeding. [Brawford v. Wolfe, 103 Mo. 391; Johnson v. Beazley, 65 Mo. 254; Vermillion v. LeClare, 89 Mo. App. 55.] This rule is sufficient to dispose of the point adversely to the contention of defendant.

The record is free from prejudicial error and the verdict of the jury is supported by substantial evidence. The judgment is affirmed. All concur.